James R. Covington and Tom E. Grace, Plaintiffs-Appellants, v. Jack N. Shaffer and R. Leonard Bartz, Co-Partners, d/b/a Hercules Investment Company, Defendants-Appellees.

**Gen. No. 10,844.**

Fourth District.

February 28, 1967.

Glenn and Logue, of Mattoon, and Robert N. Corley, of Champaign, for appellants.

Winkelman & Winkelman, of Urbana, and Burt Greaves, of Champaign, for appellees.

CRAVEN, P. J.

Plaintiffs appeal from a decision of the trial court, sitting without a jury, denying them recovery in any amount in a suit on a written contract. Plaintiffs contend that the trial court erred as a matter of law. In their view, the evidence adduced at the hearing and the law which applies thereto require a judgment in their favor.

Plaintiffs' complaint charged that the defendants, Jack N. Shaffer and R. Leonard Bartz, a partnership, doing business as Hercules Investment Company, were assigned oil leases by the plaintiffs, James R. Covington and Tom E. Grace, and that the defendants breached the terms of the contract of assignment. The particular provisions of the contract allegedly breached required the defendants to drill five discovery (test) wells on the assigned leases, at their own expense, to a depth sufficient to test the Maquoketa shale, and to complete such drilling prior to November 1, 1960. The contract further provides:

"In the event purchasers [defendants] fail to drill the five test wells or any of them prior to November 1, 1960, purchasers shall forfeit unto the sellers [plaintiffs] THREE THOUSAND DOLLARS ($3,000.00) for each test well which purchasers have failed to drill."

There is no dispute that subsequent to the execution of this agreement on March 21, 1960, only one well was drilled on the leased premises within the time specified. During this period, defendants drilled another well several miles from the leased premises.

The defendants raised two defenses in bar of the plaintiffs' claim. They claim that the agreement is void under the Illinois Securities Law of 1953 (Ill Rev Stats 1959, c 121½, par 137.1 et seq.) and that the provision plaintiffs seek to enforce in this action is a penalty clause void because of public policy. Defendants acquiesce in plaintiffs' theory that the evidence establishes that unless the contract can be avoided on one of the above-stated grounds, the defendants owe the plaintiffs $12,000 and interest for the four wells which were never drilled on the property. They admit the discovery well drilled several miles away during the life of the contract was not one of the five wells contemplated by the contract.

The evidence discloses that the assignments from the plaintiffs to the defendants were made from a large area of 20,000 acres of contiguous property in which the plaintiffs had secured oil and gas rights. The assignments were of the entire interest of plaintiffs in certain 80-acre tracts selected in checkerboard fashion throughout the larger area. The purpose of requiring the five wells was to test the whole 20,000 acres. The November 1 date for completion of these discovery wells was chosen because the plaintiffs desired to make a decision concerning whether to renew certain of the leases retained by them in the 20,000-acre area which would expire shortly thereafter.

166

The contract in question is not a security within the meaning of the statute relied upon by defendants because plaintiffs are not issuers under the Act. An "issuer" under the Act is defined in section 2B(4) as:

"With respect to fractional interests in oil, gas or other mineral lease, right, or royalty, . . . 'issuer' means the owner of the right or interest therein (whether whole or fractional), in which fractional interests are created by such owner for the purpose of sale."

■ Obviously, no fractional interests were created in any of plaintiffs' original leasehold interests by assignment of their entire lease rights and obligations to particular acreage to the defendants. The defendants thereby received all the plaintiffs' interest in the particular leaseholds assigned to them, not a fractional interest created by the contract in question.

Defendants cite many cases in support of their position that the language in the contract relied upon to support plaintiffs' claim for $3,000 for each discovery well not completed by November 1 is unenforceable as a penalty. Those cases relied upon are not applicable to the facts in evidence here. In most of them, there was no proof of any damages and the party seeking to enforce the provision labeled a "penalty" erroneously relied upon the language therein to create a presumption of damages. In these cases the courts held either that no reasonable relationship was shown between the amount set forth in the contract as damages and the amount of actual damages sustained because of the breach, or that no actual damages could be inferred despite the presence of the clause. Typical of these cases are VanKannel v. Higley, 172 Ill App 88 and Pinta v. Kral, 285 Ill App 232, 1 NE2d 876 (1st Dist 1936).

In this case there was proof tending to show defendants suffered damages and that there was a relationship to the amount to be forfeited. The evidence indicated that both

sides to the contract were aware that the November 1 requirement was inserted because certain of the leases were due to expire and additional rent would have to be paid to retain unproven leases if the wells had not been drilled by then. The actual cost of such wells was estimated to be $1,800 by defendant Shaffer and $2,500 by plaintiff Grace. There was also testimony that the plaintiffs' asking price for the leases in question was less than it would have been had the defendants not agreed to drill the wells required by the time specified, thereby forcing the plaintiffs to make other arrangements. The contract did not provide for the particular place that the wells would be drilled, but all parties to the contract agreed that the purpose of the five wells was to test the oil and gas potential of the 20,000 acres in the plaintiffs' original tract. Even though the contract was somewhat ambiguous on this point, the parties were not in disagreement as to what was required. The spacing was to be dictated for that purpose within the defendants' discretion.

 The use of the word "forfeit" by the parties to describe the payment of $3,000 per undrilled well is not conclusive. Where actual damages would be of imprecise calculation, although real and within the contemplation of the parties at the time of the agreement, it would be an unreasonable conclusion to say that, as a matter of law, defendants were entitled to judgment on the theory that the contract was void because the provisions specifying damages labeled the payment of a liquidated amount a "forfeit." On the contrary, a conclusion other than the conclusion that the $3,000-per-well figure was a reasonable provision under the circumstances is unsupported by evidence. When parties have agreed to have damages fixed on a particular basis, courts will not, unless there is good ground for it, declare such a provision to be void as a penalty. Lu-Mi-Nus Signs, Inc. v. Jefferson Shoe Stores, 257 Ill App 150.

For the reasons stated, the trial court was in error in finding the issues in favor of the defendants and against the plaintiffs. The judgment of the circuit court of Champaign County is reversed and this cause is remanded to that court with directions to enter judgment for the plaintiffs in the principal amount of $12,000 plus statutory interest thereon calculated from November 1, 1960.

Judgment reversed and cause remanded.

SMITH and TRAPP, JJ., concur.